# United States Court of Appeals

## For the First Circuit

No. 06-1547

FRANTZ GARY JENNER GUILLAUME,

Petitioner,

v.

ALBERTO GONZALES, Attorney General,

Respondent.

ON PETITION FOR REVIEW OF A FINAL ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Gibson,* Senior Circuit Judge,
and Lipez, Circuit Judge.

Robert M. Warren on brief for petitioner
Catherine Banerjee Rojko, Senior Counsel, Environmental
Enforcement Section, U.S. Department of Justice, Peter D. Keisler,
Assistant Attorney General, Civil Division, and Terri J. Scadron,
Assistant Director, Office of Immigration Litigation, on brief for
respondent.

September 27, 2007

* Of the United States Court of Appeals for the Eighth
Circuit, sitting by designation.

**LIPEZ**, **Circuit Judge**.  Appellant Frantz Guillaume entered the United States illegally and applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  After both the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") rejected his claims, Guillaume appealed.  After careful consideration of the record, we conclude that we lack jurisdiction over his asylum claim, the CAT claim was abandoned, and the BIA's rejection of the withholding of removal claim was supported by substantial evidence.

## I.

Appellant, a Haitian citizen, lived with his wife and children outside of Port-au-Prince and worked as a school teacher until 2000.  He claims that he continued living there through May 2003, and operated a small convenience store out of his home, but he has no documentation of his residence dated after 2000.  In 1999, appellant joined a political party, MOCHRENA, that opposed the then-governing Lavalas party.[1]  He served as a local delegate for MOCHRENA and participated in party meetings.

Appellant claims that he suffered numerous instances of "persecution" as a result of having switched his party affiliation. The day after an anti-Aristide demonstration on December 17, 2001, appellant's house was partially burned.  Appellant and his family

---

[1] MOCHRENA is an abbreviation for the Christian National Movement.  The Lavalas party supported the Aristide government that was in power at the time.

-2-

escaped the fire without injury, and the fire department was able to quell the flames in time to save two rooms of the house. Appellant attributes the fire to Aristide sympathizers. On March 22, 2002, appellant participated in another demonstration which led to violence, where he claims he was beaten and badly injured. A friend, who participated in the same demonstration, was killed. As a result of this violence, appellant was afraid to return to his home and opted instead to spend seven months at a friend's house in the town of Gonaives.

Upon his return to Port-au-Prince, appellant resumed his political activities. He alleges that two police officers, with whom he had been friends prior to joining MOCHRENA, threatened him repeatedly and told him to leave the country. He says that he took these threats seriously because he believed the same officers had participated in the murder of his friend. He does not claim that either officer ever physically harmed him, but contends that had he returned home, they would have likely done so.

In May 2003, appellant claims that he received two warrants instructing him to appear before a judge. Believing that compliance would likely result in his arrest, he chose to leave Haiti instead. After returning to his friend's house in Gonaives, he boarded a boat he believed was headed to Miami. The boat took him to St. Thomas, in the U.S. Virgin Islands, where he claims he stayed for about a month. In St. Thomas, he was introduced to a

man who assisted him with an application for political asylum. He then traveled to Boston in July 2003.

Appellant appeared before an IJ in October 2004 and testified to the facts described above. He provided a number of documents showing his residence in Haiti prior to 2000, including his marriage certificate and his children's birth certificates. However, he presented only one document purporting to show that he remained in Haiti after 2000. This was a letter from his church stating that he had attended a church meeting in Haiti on May 31, 2003. A friend also testified that he had spoken to appellant via telephone in June 2003, and that he could tell that the call originated in Haiti.

Under the Immigration & Naturalization Act ("INA"), an asylum applicant is required to "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the [applicant's] arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). The only means of avoiding this requirement is to persuade the Attorney General that "extraordinary circumstances" or changed conditions justified the delay. Id. § 1158(a)(2)(D). The IJ ruled that appellant had failed to carry his burden of proof as to his arrival date in the United States. Relatedly, the IJ found that appellant was time-barred from applying for asylum because he deemed appellant's testimony regarding his travel to the United States excessively

-4-

vague and inconsistent; he was unpersuaded by the corroborating witness' testimony; and he found the church letter to be a fabrication.

Alternatively, the IJ held that appellant had failed to demonstrate that a reasonable person in his situation would have a well-founded fear of persecution upon returning to Haiti. The IJ did not credit appellant's claims about past persecution, finding no evidence that the fire was connected to his political beliefs, that appellant was injured at the March 2002 rally, or that the two warrants he received in May 2003 were politically motivated. The IJ stated that these claims of past persecution were insufficient to create a rebuttable presumption of future persecution.

Additionally, the IJ found that appellant had not shown why he could not return to Haiti and live outside of Port-au-Prince. This finding was based on appellant's testimony that on two separate occasions, after feeling unsafe at his home in Port-au-Prince, he stayed with a friend in Gonaives, where he experienced no threats or violence. The IJ also found that there was insufficient evidence that any of the past harms suffered by appellant were caused by his political party affiliation. Finally, the IJ stated that appellant had not sufficiently demonstrated that the changes in country conditions in Haiti had been inadequate to mitigate his fears of persecution. On all of these bases, the IJ held that "the evidence is lacking to establish a well-founded fear

of persecution, a clear probability of persecution, [or] that the authorities would ever detain this respondent and subject him to torture." Therefore, all three claims for relief were denied.[2]

On appeal, the BIA affirmed and adopted the IJ's decision, adding only that appellant had not provided evidence of any exceptional circumstances that would excuse his failure to timely file an application for asylum.

Where the BIA adopts an IJ's decision, we review the relevant portion of the IJ's opinion as though it were the decision of the BIA. Stroni v. Gonzales, 454 F.3d 82, 86-87 (1st Cir. 2006). We reverse findings of fact only if they are unsupported by substantial evidence, meaning that a reasonable fact finder reviewing the entire record would be compelled to conclude to the contrary. Id. at 87.

## II.

The INA bars any court from exercising jurisdiction over a determination by the Attorney General regarding the satisfaction

---

[2] An asylum applicant must show a "well-founded fear of future persecution" to be eligible for relief. 8 U.S.C. § 1101(a)(42)(A). The standards for withholding of removal or protection under the Convention Against Torture ("CAT") are higher: an alien must show that it is more likely than not that he would suffer persecution or torture upon returning home. See 8 U.S.C. § 1231(b)(3)(A) (withholding of removal); 8 C.F.R. § 208.16(c)(2) (CAT). Therefore, if an alien cannot satisfy the standard for asylum eligibility, he will also be unable to demonstrate eligibility for these other forms of relief. See, e.g., Palma-Mazariegos v. Gonzales, 428 F.3d 30, 37 (1st Cir. 2005) (explaining that failure to satisfy the asylum standard results in failure to satisfy the withholding of removal standard).

of the timeliness requirement for asylum applications.  8 U.S.C. § 1158(a)(3); see also Stroni, 454 F.3d at 87; Sharari v. Gonzales, 407 F.3d 467, 473 (1st Cir. 2005).  The BIA has determined that appellant's application for asylum was not timely; we have no jurisdiction to review that decision.  We review only appellant's withholding of removal and CAT claims.

To be eligible for withholding of removal, an alien must show that his or her "life or freedom would be threatened in [his or her home country] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  In order to carry his or her burden of persuasion, the alien must show either past persecution (thereby giving rise to a rebuttable presumption of future persecution) or that it is more likely than not that he will suffer persecution on account of a protected ground if he returns to his home country.  See 8 C.F.R. § 208.16(b); see also Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005).

The BIA's finding that appellant failed to demonstrate past persecution, giving rise to a presumption of likely future persecution upon his return to Haiti, easily survives our review for substantial evidence.  Our review of appellant's testimony before the IJ supports the BIA's finding.  Even if credible, appellant's testimony does not describe persecution, as we have defined that term.  See Sharari, 407 F.3d at 474 ("Persecution does

-7-

not include 'all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional.'" (quoting Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993)). Appellant appears to have suffered some unpleasant treatment, but he has not shown that he has been the target of persecution. He had no specific knowledge of how the fire was started or by whom, nor was there any evidence (other than its perhaps unfortunate timing) that it was related to his political activities. He described a series of threats and taunts by his two former friends, now working as police officers, but testified that they had never physically harmed him. His single account of physical harm arose from his participation in a violent demonstration; appellant provided no evidence of the severity of his injuries, and his description suggested that he experienced harassment and the general effects of a violent encounter between political opponents. Nothing in this record compels us to conclude that appellant has demonstrated past persecution.

Additionally, the IJ concluded that appellant had not explained why he could not return to Haiti and live outside of Port-au-Prince. He testified to having stayed with a friend in the town of Gonaives for seven months, and encountered no threats or violence while living there, leading the IJ to find that his claims, even if entirely true, were insufficient to merit relief because they appeared to be localized. "[A]n alien who asserts a

fear of future persecution by local functionaries ordinarily must show that those functionaries have more than a localized reach." Da Silva, 394 F.3d at 7. While testifying before the IJ, appellant stated that the reason he experienced no threats or violence while staying in Gonaives was that he had no problems with the police there. This testimony suggests that his "problems" are with a localized faction of Lavalas party members and police officers and, thus, undermines his asserted fear of future persecution in Haiti. The IJ's conclusion, that appellant failed to demonstrate a likelihood of future persecution, based on his inability to explain why he could not live safely in another part of Haiti, is supported by the record. We find nothing that would compel an opposite finding.

Finally, appellant requests that we reverse the BIA's denial of relief under the CAT. In his brief to the BIA, however, appellant made only a single reference to the CAT in his conclusion. He cited no legal authority for this claim, did not describe the legal standard for relief under the CAT, and made no argument as to why he ought to be given relief on that basis. Therefore, his CAT claim was waived before the BIA and cannot be revived in this court. See Olujoke v. Gonzales, 411 F.3d 16, 22-23 (1st Cir. 2005) ("The petitioner failed to make any developed argumentation in support of [her CAT claim] before the BIA. Thus, the doctrine of exhaustion of administrative remedies bans any

-9-

attempt on her part to resurrect the issue here."); <u>Da Silva</u>, 394 F.3d at 4 n.3 (noting that where a petitioner did not present a claim to the BIA when appealing an IJ's decision, the claim is abandoned and is not susceptible to subsequent judicial review).

**The petition for review is denied.**