# United States Court of Appeals
## For the First Circuit

No. 07-2230

OMEGA H. SINURAT,

Petitioner,

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Selya and Howard, <u>Circuit Judges</u>.

<u>William A. Hahn</u> and <u>Hahn & Matkov</u> on brief for petitioner.
<u>Kathleen J. Kelly</u>, Trial Attorney, Office of Immigration Litigation, <u>Jeffrey S. Bucholtz</u>, Acting Assistant Attorney General, Civil Division, and <u>Mary Jane Candaux</u>, Assistant Director, U.S. Department of Justice, Office of Immigration Litigation, on brief for respondent.

August 8, 2008

**LYNCH**, **Chief Judge**.  Omega H. Sinurat, a native and citizen of Indonesia, petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  We deny the petition.

Sinurat entered the United States on April 25, 2003 using a passport that he obtained under an assumed name.  He applied for asylum on July 2, 2004.  The Department of Homeland Security ("DHS") issued a Notice to Appear to Sinurat on September 9, 2004, charging him as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an alien not in possession of a valid entry document as required by the Immigration and Nationality Act.  Sinurat conceded his removability, but applied for asylum, withholding of removal, and protection under the CAT.  A hearing was held before an Immigration Judge ("IJ") on December 6, 2005.

Sinurat testified that he is a Christian Protestant and was persecuted in Indonesia on the basis of religion.  In 1992, more than ten years before he entered the United States, he was beaten by three students from a rival, predominantly Muslim high school.  Sinurat testified they targeted him because he attended a predominantly Christian school.  Although he reported the incident to local police, the police took no action.  Sinurat was not hospitalized for his injuries, and he returned to school the next day.

Sinurat also described a second incident in 1992 in which students from the rival Muslim high school stabbed his friend in the back with a knife. Although his friend was taken to the hospital, the police again did not take action. Sinurat testified that he feared returning to Indonesia because of these incidents and because of a series of church bomb threats in 2000, including an attack on his family's church. He and his family feared attending church because of these threats. After high school, Sinurat attended a Catholic college for five years in Indonesia without experiencing any threats to his safety.[1] The rest of his family remains in Indonesia today.

Sinurat further testified that he tried to obtain a visa in his own name, but after being rejected three times, he obtained a visa under a false name, Dotte Damawan, in February 2001. He left for the United States in April 2003. Sinurat testified that he waited to leave Indonesia because he was working and saving money to come to the United States, and because he was waiting for permission from his parents to leave.

The IJ rejected Sinurat's claims for asylum, withholding of removal, and protection under the CAT, and found him removable as charged. Although he found Sinurat credible, the IJ found that

---

[1]Although Sinurat testified that his family was attacked once, and alluded to "incidents . . . in 1998," he never elaborated on these events elsewhere in the record, and the IJ found that any allegations were "merely anecdotal, unsubstantiated, and unreliable testimony."

it was unclear whether Sinurat had been targeted in 1992 because of his religion or because he was a student at a rival high school. Regardless, the IJ determined that the harm Sinurat experienced only amounted to "sporadic private discrimination" and that there was no evidence that such discrimination was "sponsored, supported, or condoned by the government." Moreover, the IJ concluded that such sporadic discrimination could not give Sinurat an objectively reasonable fear of future persecution because Sinurat had not suffered problems while attending college in Indonesia, and because he delayed his departure for two years after receiving a visa. Further, the IJ emphasized that Sinurat's family continued to live unharmed in Indonesia, and Sinurat had not provided evidence of threats against them. The IJ granted Sinurat voluntary departure.

Sinurat appealed the IJ's decision to the BIA on January 3, 2006. The BIA dismissed Sinurat's appeal on July 10, 2007. The BIA agreed with the IJ's opinion, finding no clear factual error in the IJ's determination that Sinurat's high school incident did not rise to the level of persecution. The BIA agreed with the IJ that even if Sinurat could establish a genuine fear of persecution, his fear was not objectively reasonable. The BIA further concluded that Sinurat had also failed to satisfy the higher standard for withholding of removal and that he had failed to provide any evidence that he would be subjected to torture if returned to Indonesia. Sinurat timely petitioned this court for review.

We review the BIA's factual findings under the deferential substantial evidence standard. Kechichian v. Mukasey, No. 07-1584, ___ F.3d. ___, 2008 WL 2814789, at *3 (1st Cir. July 23, 2008). "When the BIA adopts the IJ's opinion and discusses some of the bases for the IJ's opinion, we have authority to review both the IJ's and the BIA's opinions." Ouk v. Gonzales, 464 F.3d 108, 110 (1st Cir. 2006). We uphold the BIA's findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Sharari v. Gonzales, 407 F.3d 467, 473 (1st Cir. 2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)) (internal quotation marks omitted). We reverse only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also, e.g., Chikkeur v. Mukasey, 514 F.3d 1381, 1382-83 (1st Cir. 2008).

To qualify for asylum, Sinurat bears the burden of proving that he has suffered past persecution or has a well-founded fear of future persecution based on his religion. See Chikkeur, 514 F.3d at 1382. To qualify as persecution, the harm to the petitioner must exceed "unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000). Substantial evidence supports the BIA's determination that the harms Sinurat suffered in Indonesia did not constitute persecution.

Sinurat claims that de novo review is required because the IJ stated that it was "unclear" whether the students attacked

-5-

Sinurat because he was a Christian or because of the schools' rivalry, rather than making an explicit finding. This argument has no merit. See Pulisir v. Mukasey, 524 F.3d 302, 310 (1st Cir. 2008) ("[It] does [not] matter that the BIA and IJ did not dissect every scrap of proof."). Both the IJ and the BIA concluded that regardless of the students' motives, the harm Sinurat experienced in this one-time incident did not amount to past persecution.

Sinurat also argues, with regard to his claim of future persecution, that the IJ erred by relying on the more positive sections of the State Department reports, which were less favorable to his case, instead of relying on the sections describing a more negative outlook for Indonesian Christians. The IJ's assessment of the reports was not unreasonable. See Pan v. Gonzales, 489 F.3d 80, 87 n.6 (1st Cir. 2007) (deferring to the IJ's "reasonable" choice to rely on an "unfavorable passage" from a State Department report over a passage "more favorable" to the petitioner); see also Sipayung v. Gonzales, 491 F.3d 18, 21 (1st Cir. 2007) ("We cannot say the IJ's reading of the State Department reports was unreasonable, especially in light of the experience of [the petitioner's] family, all of whom practiced Christianity in Indonesia without persecution.").

Sinurat also argues that the IJ erred by finding that Sinurat had not shown that the Indonesian government actively discriminates against and persecutes Christians. The IJ, and

ultimately the BIA, reasonably found no connection between the Indonesian government's treatment of Christians generally and the isolated attack on Sinurat. See Kho v. Keisler, 505 F.3d 50, 54 (1st Cir. 2007) ("We have repeatedly affirmed the BIA's determinations . . . that there is no ongoing pattern or practice of persecution against . . . Christians in Indonesia."); see also Sombah v. Mukasey, 529 F.3d 49, 51 (1st Cir. 2008) ("Discrimination in Indonesia does not, without more, qualify a Christian Indonesian national for asylum.").

The BIA also correctly found that Sinurat failed to satisfy the requirements for withholding of removal. If the applicant cannot meet the lower burden of proof for establishing his eligibility for asylum, he therefore cannot satisfy the more stringent standard for withholding of removal. See Makhoul v. Ashcroft, 387 F.3d 75, 82 (1st Cir. 2004).

Lastly, because Sinurat does not make any arguments in either his petition or his brief before the BIA regarding relief under the CAT, that claim is waived. See Sombah, 529 F.3d at 52; Zeru v. Gonzales, 503 F.3d 59, 66 n.4 (1st Cir. 2007).

We deny the petition for review.