**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3567

_____

HARLEN ELISA RODRIGUEZ-CHAVEZ;
A. A. R.-C.,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA

_____

On Petition for Review of a Decision of
the Board of Immigration Appeals
(Agency Nos. A202-128-945, A202-128-946)
Immigration Judge: Steven A. Morley

_____

Submitted under Third Circuit L.A.R. 34.1(a)
October 4, 2021

_____

Before: SHWARTZ, RESTREPO, and SCIRICA, <u>Circuit Judges</u>.

(Filed: November 18, 2021)

_____

OPINION*

_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Harlen Rodriguez-Chavez and her minor child A. A. R.-C. petition for review of a decision of the Board of Immigration Appeals ("BIA") affirming the order of the Immigration Judge ("IJ") denying Rodriguez-Chavez's applications for asylum and withholding of removal.[1] For the reasons that follow, we will deny the petition.

I

Rodriguez-Chavez is a native and citizen of El Salvador. She entered the United States without admission or parole in October 2014. The Department of Homeland Security issued her a Notice to Appear in Immigration Court, charging her with removability pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I). Rodriguez-Chavez appeared and conceded removability.

Rodriguez-Chavez filed applications for asylum under 8 U.S.C. § 1158 and withholding of removal under 8 U.S.C. § 1231(b)(3). In her asylum application, she stated that she feared the Mara 18 gang would harm her because her father witnessed a gang murder. At her hearing, she testified that she feared gang retaliation for the legal work her brother provided in El Salvador and that the police could not protect her from

---

[1] Rodriguez-Chavez listed A. A. R.-C. as a derivative beneficiary on her asylum application. Because their asylum claims rise and fall together, we refer only to Rodriguez-Chavez in this opinion. Derivative beneficiary status, however, does not exist for withholding of removal, so A. A. R.-C. is ineligible for relief on that basis. See Warui v. Holder, 577 F.3d 55, 58 (1st Cir. 2009); Matter of A-K-, 24 I. & N. Dec. 275, 279 (B.I.A. 2007).

2

the gangs.[2]  As relevant to this appeal, she also asserted that she would be persecuted because she is a member of a purported particular social group ("PSG"): "persons perceived to have contravened gang rules."[3]  A.R. 196.  Additionally, she argued that she would face persecution for a political opinion, namely her opposition to gang rule.

The IJ denied Rodriguez-Chavez's applications for asylum and withholding of removal and ordered her removal.  The IJ found Rodriguez-Chavez's testimony to be credible, but concluded that she was not entitled to relief because: (1) she had not presented evidence of past persecution in El Salvador; (2) she could not establish a well-founded fear of future persecution based on her status as a person "perceived as contravening gang rules" because this "amorphous" category does not constitute a PSG, A.R. 59; and (3) her political opinion claim failed since (a) there was insufficient evidence that "the gang structure in El Salvador is, in essence, a political force that dominates life in El Salvador," and (b) "refusal of gang wishes is not an expression of political points of view such that persecution for them constitutes a political persecution," A.R. 61-62.  Because Rodriguez-Chavez could not meet the lower standard for asylum,

---

[2] Rodriguez-Chavez's brother also testified that gangs may retaliate against Rodriguez-Chavez due to his criminal defense work in El Salvador.
[3] Before the IJ, Rodriguez-Chavez argued that she belonged to two other PSGs but she has not challenged the conclusion that these groups, namely (1) women who cannot leave an abusive relationship, and (2) family members of someone who witnessed a gang crime, are not PSGs so any arguments regarding those PSGs are thus waived.  United States v. Quillen, 335 F.3d 219, 224 (3d Cir. 2003).

the IJ found that her claim for withholding of removal also failed. Rodriguez-Chavez appealed to the BIA.

The BIA adopted the IJ's opinion and dismissed the appeal. The BIA determined that: (1) "persons perceived to have contravened gang rules" is not a cognizable PSG because it is "amorphous" and Rodriguez-Chavez "presented insufficient evidence to show that Salvadoran society perceives, considers, or recognizes such individuals as being treated any differently than any other person opposing the purposes of the gang," and (2) her political opinion claim failed because she did not "establish that the gangs would target her based on her belief that her opposition to the gang was a political opinion." A.R. 3. As a result, the BIA found that Rodriguez-Chavez was not entitled to asylum or withholding of removal.

Rodriguez-Chavez petitions for review.

## II[4]

An alien who enters the United States without permission is removable. See 8 U.S.C. §§ 1182(a)(6)(A)(i), 1227(a)(1)(A). A removable alien may be eligible for

---

[4] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction over final orders of the BIA under 8 U.S.C. § 1252(a)(1). See Garcia v. Att'y Gen., 665 F.3d 496, 502 n.4 (3d Cir. 2011).

Where, as here, the BIA expressly adopts portions of the IJ opinion, we review both the IJ and BIA decisions. See S.E.R.L. v. Att'y Gen., 894 F.3d 535, 543-44 (3d Cir. 2018). We review legal determinations de novo and "accept factual findings if supported by substantial evidence," meaning we must "uphold the agency's determination unless the evidence would compel any reasonable fact finder to reach a contrary result." Sesay v. Att'y Gen., 787 F.3d 215, 220 (3d Cir. 2015) (citations omitted).

asylum if she demonstrates that she is "unable or unwilling to return to, and is unable or unwilling to avail [herself] . . . of the protection of, [the country to which she would be removed] because of persecution or a well-founded fear of persecution on account of . . . membership in a [PSG] . . . or political opinion." 8 U.S.C. § 1101(a)(42)(A); see also id. § 1158(b)(1)(B)(i). We first address Rodriguez-Chavez's PSG claim and then turn to her political opinion claim.

A

Substantial evidence supports the BIA's and IJ's finding that "persons perceived to have contravened gang rules" is not a cognizable PSG. A.R. 3; Pet'r Br. at 3. A PSG must be: "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." S.E.R.L. v. Att'y Gen., 894 F.3d 535, 540 (3d Cir. 2018) (quotation marks and citation omitted). Particularity "addresses the outer limits of a group's boundaries and is definitional in nature, whereas social distinction focuses on whether the people of a given society would perceive a proposed group as sufficiently separate or distinct." Id. at 548 (quotation marks omitted). To satisfy the particularity requirement, "an alleged social group [must] have discrete and . . . definable boundaries that are not amorphous, overbroad, diffuse, or subjective, so as to provide a clear standard for determining who is a member." Id. (quotation marks and citation omitted).

Rodriguez-Chavez's proposed PSG lacks social visibility and definable boundaries. First, the concept of "contravening gang rules" is vague. For example, it is

unclear whether "contravening gang rules" means only active contravention, such as defying curfews, requests for bribes, or recruitment efforts, or if it also captures more passive opposition to gang activity, of which the gang itself may not even be aware. Second, there is no evidence that Salvadoran society would recognize those who contravene gang rules as socially distinct or different from others who oppose gangs. Third, a similar and more specific group than that which Rodriguez-Chavez proposes—those targeted for resisting gang recruitment—is not recognized as a cognizable PSG because such a group is neither particular nor socially distinct. See Santos-Ponce v. Wilkinson, 987 F.3d 886, 890 (9th Cir. 2021) (explaining that "minors who oppose gang membership" is not "sufficiently particular or socially distinct"); Paiz-Morales v. Lynch, 795 F.3d 238, 244 (1st Cir. 2015) (concluding that proposed group of individuals opposed to gang membership lacked particularity because "[a] group consisting of all Guatemalan citizens who do not sport gang colors and tattoos is by definition too amorphous and overbroad to be particular"); Rodas-Orellana v. Holder, 780 F.3d 982, 991-93 (10th Cir. 2015) (holding that proposed group of "El Salvadoran males threatened and actively recruited by gangs, who resist joining because they oppose the gangs" lacked social distinction); see also Quintanilla-Mejia v. Garland, 3 F.4th 569, 589 (2d Cir. 2021) (concluding that "former gang members who renounce their gang membership," "former gang members who actively oppose gangs," and "persons who (regardless of former gang association) work to help youths resist gang membership" in El Salvador do not satisfy the particularity or social distinction elements). Accordingly, Rodriguez-Chavez has

6

failed to demonstrate that her proposed PSG is particular or socially distinct.  Thus, her alleged fear of persecution based upon membership in such a group does not provide a basis for asylum.

B

To qualify for asylum based on a political opinion, a petitioner must demonstrate that she has faced or will face persecution because of that opinion.  8 U.S.C. § 1101(a)(42)(A); INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992); see also Ndayshimiye v. Att'y Gen., 557 F.3d 124, 129 (3d Cir. 2009) ("[A] key task for any asylum applicant is to show a sufficient 'nexus' between persecution and one of the listed protected grounds.").  Even assuming Rodriguez-Chavez's views about gangs constitute a political opinion, substantial evidence supports the BIA's conclusion that she "did not meet her burden to establish that the gangs would target her based on . . . her opposition to the gang."  A.R. 3.  She has not shown that the gang was aware of her opinion or that the gang would persecute her because of that opinion.  As a result, her political opinion claim fails.[5]  See Valdiviezo-Galdamez v. Att'y Gen., 663 F.3d 582, 609 (3d Cir. 2011) (rejecting asylum claim where there was "no evidence that [petitioner's] refusal to join

---

[5] Indeed, Rodriguez-Chavez does not contest this no-nexus finding, arguing instead that the IJ erred by requiring that the potential persecutor "must be a government, or that the applicant must have a political opinion regarding a formal government."  Pet'r Br. at 30.  We need not address this argument because, even assuming that the Salvadoran gangs constitute a government for asylum purposes, Rodriguez-Chavez has failed to establish the requisite nexus between her political opinion and the threat of future persecution by those gangs.

7

was taken by the gang as an expression of [a] political opinion" and concluding that "refusal . . . based on an internally held political opinion . . . cannot support a claim that he was persecuted on account of that political opinion").[6]

## III

For these reasons, we will deny the petition for review.

---

[6] Because Rodriguez-Chavez's asylum claims fail, she is also not entitled to withholding of removal, which carries a higher standard of proof.  See Blanco v. Att'y Gen., 967 F.3d 304, 315 (3d Cir. 2020).